Filed 7/31/23  P. v. Cordero CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B323014 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA129304) |
| v. | |
| DANIEL CORDERO, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Joseph R. Porras, Judge.  Affirmed.

Paul Couenhoven, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Michael C. Keller and John Yang, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Daniel Cordero was convicted of second degree murder as an accomplice to a first degree murder. He appeals from an order, after an evidentiary hearing, denying his petition for resentencing under Penal Code section 1172.6 (former section 1170.95),[1] contending that to be guilty of aiding and abetting murder, the aider and abettor must harbor the specific intent to commit the murder. Implied malice is not a sufficient mens rea for aiding and abetting a murder, he argues, because it does not meet the requirement that an aider and abettor harbor the specific intent to commit murder. After rejecting the premise that Cordero was found to have harbored only implied malice, we follow several published opinions in concluding that an aider and abettor can be convicted of second degree murder even if he does not expressly intend to aid a killing, but only knows that his or her conduct endangers the life of another and acts with conscious disregard for life. We therefore affirm the order denying Coreas's resentencing petition.

## BACKGROUND

### I. Charges, Trial and Direct Appeal

Neither party presented new evidence at the evidentiary hearing on Cordero's resentencing petition. The court based its denial of Cordero's petition on the testimony in the trial transcripts. Because Cordero does not challenge the sufficiency of the evidence supporting denial of his petition, our recitation of the facts will be brief.

On March 20, 2012, Roxy Borboa and others arrived at CM Racing shop in South Gate in a car driven by Jaime Torres. When they arrived at the shop, Cordero and Christian Calderon

---

[1] Undesignated statutory references will be to the Penal Code.

approached, and Calderon asked the group where they were from, a common gang challenge, and said the area was his "hood." Calderon brandished a handgun but then put it away. Cordero, also carrying a gun, asked Torres's group whether they had a problem "with his homey or his neighborhood." He said he and Calderon were from Aztlan, a street gang, and this was their neighborhood. He pressed his gun against a passenger's cheek and told him that if there was a problem he would pull the trigger. Calderon and Cordero then stepped away from the car and Torres accelerated quickly away.

Calderon and Cordero both fired their guns. Calderon's bullet struck Borboa in the head, killing her. Cordero said, "Dome shot" (meaning gunshot to the head), and went into the shop.

At trial, the jury was instructed with CALCRIM instructions Nos. 400 (general aiding and abetting principles), 401 (aiding and abetting—intended crimes), 402 (the natural and probable consequences doctrine), 520 (first or second degree murder with malice aforethought), and 521 (first degree murder).

CALCRIM No. 401 provided that the prosecution must prove that the aider and abettor defendant "intended to aid and abet the perpetrator in committing the [murder] [¶] . . . [¶] . . . [and that he] kn[ew] of the perpetrator's unlawful purpose and . . . specifically intend[ed] to, and [did] in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime."

The jury convicted Calderon of first degree murder and found that he intentionally discharged a firearm, which proximately caused death to Roxy Borboa.

3

The jury acquitted Cordero of first degree murder but found him guilty of second degree murder, four counts of assault with a semiautomatic firearm, and one count of shooting at an occupied vehicle. (Pen. Code, §§ 187, subd. (a), 245, subd. (b), 246.) The jury found true as to all counts that the crimes involved the intentional use of firearms and were committed to benefit a criminal street gang. (§ 186.22, subd. (b)(1).)

The trial court sentenced Cordero to a term of 79 years to life.

We affirmed the conviction but remanded the case for resentencing on the enhancements. (*People v. Cordero* (Apr. 30, 2018, B280146) [nonpub. opn.].)

## A.    Resentencing Petition

In 2019, Cordero filed a petition for resentencing under former section 1170.95 (now § 1170.6), which the trial court denied based on its finding that Cordero was a major participant in a felony leading to the murder and acted with reckless indifference to human life. We reversed and remanded the matter because the record, which reflected that the prosecutor had relied on the natural and probable consequence doctrine as an alternate theory, did not show as a matter of law that Cordero was ineligible for resentencing relief. (*People v. Cordero* (Apr. 2, 2021, B307245) [nonpub. opn.].)

At the subsequent evidentiary hearing, neither party presented new evidence.

Relying on the trial transcripts, the court stated, "There's no doubt in my mind that he's guilty beyond a reasonable doubt on an aiding and abetting theory from the initial hit up to bringing out the gun, to shooting, to having his hand extended toward the car. That, to me, definitely fits the classic definition

4

of aiding and abetting."  The court stated it believed Cordero was "guilty beyond a reasonable doubt of first degree murder of Roxy Borboa, but the jury found him [guilty only] as to second degree. So the court . . . finds beyond a reasonable doubt after full review of the case that he is guilty of murder in the second degree."

The court denied Cordero's resentencing petition, and he appeals.

## DISCUSSION

Cordero does not contest the sufficiency of the evidence to deny his resentencing petition but contends the trial court erred in denying it because accomplice liability for second-degree murder is no longer a valid theory.  We disagree.

Because Cordero raises only a question of statutory construction of the law defining murder, our review is de novo. (*People v. Gonzalez* (2017) 2 Cal.5th 1138, 1141.)

### A.    **Legal Principles**

"All murder that is perpetrated by . . . any . . . kind of willful, deliberate, and premeditated killing . . . is murder of the first degree."  (§ 189, subd. (a).)  "All other kinds of murders are of the second degree."  (*Id*. at subd. (b).)

"Murder, whether in the first or second degree, requires malice aforethought.  (§ 187.)  Malice can be express or implied. It is express when there is a manifest intent to kill (§ 188, subd. (a)(1)); it is implied if someone kills with 'no considerable provocation . . . or when the circumstances attending the killing show an abandoned and malignant heart' (§ 188, subd. (a)(2)). When a person directly perpetrates a killing, it is the perpetrator who must possess such malice.  [Citations.]  Similarly, when a person directly aids and abets a murder, the aider and abettor must possess malice aforethought." (*People v. Gentile* (2020) 10

Cal.5th 830, 844-845 (*Gentile*), superseded by statute on other grounds as stated in *People v. Glukhoy* (2022) 77 Cal.App.5th 576, 584 (*Glukhoy*).)

"A person who aids and abets the commission of a crime is culpable as a principal in that crime. (§ 31.) Aiding and abetting is not a separate offense but a form of derivative liability for the underlying crime." (*Gentile*, *supra*, 10 Cal.5th at p. 843.) An accomplice is guilty of a murder perpetrated by another "if the accomplice aids the commission of that offense with 'knowledge of the direct perpetrator's unlawful intent and [with] an intent to assist in achieving those unlawful ends.' " (*Ibid*.)

A second-degree murder conviction may be obtained "only if the prosecution can prove the defendant acted with the accompanying mental state of mind of malice aforethought. The prosecution cannot 'impute[] [malice] to a person based solely on his or her participation in a crime.' " (*Gentile*, *supra*, 10 Cal.5th at p. 846.)

Because malice may be implied "if someone kills with 'no considerable provocation . . . or when the circumstances attending the killing show an abandoned and malignant heart' " (*Gentile*, *supra*, 10 Cal.5th at p. 844), it follows that "an aider and abettor who does not expressly intend to aid a killing can still be convicted of second degree murder if the person knows that his or her conduct endangers the life of another and acts with conscious disregard for life." (*Id*. at p. 850.)

"Senate Bill 1437 'amend[ed] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who

6

acted with reckless indifference to human life.' (Stats. 2018, ch. 1015, § l, subd. (f).)" (*Gentile, supra,* 10 Cal.5th at p. 842.)

"To further that purpose, Senate Bill 1437 added three separate provisions to the Penal Code. First, to amend the felony murder rule, Senate Bill 1437 added section 189, subdivision (e): 'A participant in the perpetration or attempted perpetration of [qualifying felonies] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2.' " (*Gentile, supra,* 10 Cal.5th at p. 842.) Because Cordero was not prosecuted under a theory of felony murder, this provision is not at issue here.

"Second, to amend the natural and probable consequences doctrine, Senate Bill 1437 added section 188, subdivision (a)(3) (section 188(a)(3)): 'Except [for felony-murder liability] as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime.' " (*Gentile, supra,* 10 Cal.5th at pp. 842-843.)

"Third, Senate Bill 1437 added section 1170.95 to provide a procedure for those convicted of felony murder or murder under the natural and probable consequences doctrine to seek relief under the two ameliorative provisions above." (*Gentile, supra,* 10 Cal.5th at p. 843.) The Legislature subsequently renumbered

7

section 1170.95 as section 1172.6. (*People v. Delgadillo* (2022) 14 Cal.5th 216, 223, fn. 3.)

"Under newly enacted section 1172.6, the process begins with the filing of a petition containing a declaration that all requirements for eligibility are met [citation], including that '[t]he petitioner could not presently be convicted of murder or attempted murder because of changes to [Penal Code] Section 188 or 189 made effective January 1, 2019,' the effective date of Senate Bill 1437." (*People v. Strong* (2022) 13 Cal.5th 698, 708 (*Strong*).)

## B.    Cordero Is Not Eligible for Resentencing Relief

Here, the trial court reviewed the evidence and found that Cordero's conduct, "from the initial hit up to bringing out the gun, to shooting, to having his hand extended toward the car," fit "the classic definition of aiding and abetting." The court therefore found Cordero was guilty beyond a reasonable doubt of second-degree murder. Because Cordero does not contest the sufficiency of the evidence supporting this finding, we must affirm the order denying his resentencing petition unless some issue of law precludes accomplice liability for second-degree murder.

Cordero argues that implied malice is not a sufficient mens rea for aiding and abetting murder because it does not meet the requirement that an aider and abettor harbor the specific intent to commit murder.

We reject the argument for two reasons.

### 1.    There Was No Finding of Implied Malice

First, there was no finding by either the jury at trial or the court at resentencing that Cordero acted only with implied malice. All murder requires malice, whether express or implied.

8

Malice is express when there is intent to kill.  Malice is implied if the actor " 'knows that his conduct endangers the life of another and . . . acts with conscious disregard for life.' " (*People v. Soto* (2018) 4 Cal.5th 968, 974.)  First-degree murder further requires willfulness, deliberation and premeditation.  (§ 189, subd. (a).) "[A] murder committed with express malice could constitute second degree murder." (*People v. Rogers* (2006) 39 Cal.4th 826, 867 ["the emotional, impulsive nature of the killing [could have] precluded a finding of premeditation and deliberation but [permitted a finding] that defendant nevertheless intended to kill"].)

Just because the jury convicted Cordero only of second-degree murder does not mean it found he did not intend the murder, i.e., did not harbor express malice.  The jury may have found only that he did not act with willfulness, deliberation and premeditation.

### 2. There is No Requirement that An Accomplice and Perpetrator Share the Same Intent

Second, there is no requirement that an accomplice and the perpetrator harbor the same specific intent to commit murder.

Direct aiding and abetting "requires proof that an aider and abettor rendered aid with an intent or purpose of *either* committing, *or* of *encouraging or facilitating* commission of, the target offense." (*People v. Beeman* (1984) 35 Cal.3d 547, 551, italics added.)  " 'It is the intent to encourage and bring about conduct that is criminal, *not the specific intent that is an element of the [charged crime]*, which *Beeman* holds must be found by the jury.' " (*People v. McCoy* (2001) 25 Cal.4th 1111, 1118, fn. 1, italics added (*McCoy*); see also *People v. Mendoza* (1998) 18 Cal.4th 1114, 1132 ["The mental state required for an aider and

abettor is the same for all crimes and is independent of the perpetrator's mental state.  The aider and abettor must specifically intend to aid the perpetrator, whether the intended crime itself requires a general or specific intent on the part of the perpetrator"].)

As our Supreme Court stated in *Gentile*, "an aider and abettor who does not expressly intend to aid a killing can still be convicted of second degree murder if the person knows that his or her conduct endangers the life of another and acts with conscious disregard for life."  (*Gentile*, *supra*, 10 Cal.5th at p. 850.)

The aider and abettor therefore need not specifically intend to commit the offense itself; he need only intend to facilitate another's commission of it.  This would be the case, for example, if the accomplice is indifferent to the victim but intends for reasons of solidarity to assist the perpetrator in whatever he chooses to do.  An accomplice may thus be convicted of second degree murder even though the primary party is convicted of first degree murder.

Cordero urges us to disregard the above quoted statement in *Gentile* (and the courts that followed it) because it is dicta.  We decline to do so.

First, the statement is not dicta.  In *Gentile*, the evidence suggested that the victim was beaten by both the defendant with his hands and by his friend with a sledgehammer.  (*Gentile*, *supra*, 10 Cal.5th at p. 840.)  A jury convicted the defendant of first degree murder but did not find he used a deadly or dangerous weapon in committing the crime, suggesting the jury did not think he was the actual perpetrator.  (*Id*. at p. 841.)  After reversal on appeal the prosecution elected to accept a reduction to second degree murder.  (*Ibid*.)

10

The issue before the Court was whether Senate Bill No. 1437 eliminated natural and probable consequences liability for second-degree murder.  On this issue, the San Diego County District Attorney writing as amicus argued that Senate Bill No. 1437 should not be interpreted to eliminate entirely the natural and probable consequences doctrine for murder, because to do so would allow some accomplices to " 'literally g[et] away with murder.' " (*Gentile, supra*, 10 Cal.5th at p. 850.)  The District Attorney gave two examples where accomplices who did not expressly intend to aid a killing could escape liability for murder if the doctrine was eliminated altogether.  It was in answering this argument and rejecting the District Attorney's examples that the Court said that "an aider and abettor who does not expressly intend to aid a killing can still be convicted of second degree murder if the person knows that his or her conduct endangers the life of another and acts with conscious disregard for life." (*Ibid.*)

The statement thus went to the heart of the issue before the Court—whether Senate Bill No. 1437 should be interpreted to eliminate natural and probable consequences liability for accomplices to murder.  It was therefore not dicta.

Even if the *Gentile* statement was dicta and therefore not binding precedent, it is well settled that our high court's " 'dicta generally should be followed, particularly where the comments reflect the court's considered reasoning.' " (*People v. Tovar* (2017) 10 Cal.App.5th 750, 759; see also *United Steelworkers of America v. Board of Education* (1984) 162 Cal.App.3d 823, 835 ["Even if properly characterized as dictum, statements of the Supreme Court should be considered persuasive"]; *City of Los Angeles v. San Pedro, L.A. & S.L.R. Co.* (1920) 182 Cal. 652, 660 ["The

11

statements in the opinions of the [S]upreme [C]ourt of this state . . . although *obiter dicta*, are very persuasive"].)

In our view the *Gentile* Court's recognition of liability for aiding and abetting murder on an implied malice theory reflected "considered reasoning" because it flowed naturally within the Court's methodical argument.  It is therefore persuasive and should be followed.  (See *People v. Powell* (2021) 63 Cal.App.5th 689, 713 [relying on the quotation from *Gentile*]; *People v. Superior Court* (*Valenzuela*) (2021) 73 Cal.App.5th 485, 499 [same; concluding that *Powell* was "entirely consistent with *Gentile* in basing murder liability on the aider and abettor's own [implied malice] state of mind—*conscious* disregard for life"]; *People v. Langi* (2022) 73 Cal.App.5th 972, 979 [same; "a direct aider and abettor of the killing who knew that his (or her) conduct endangered the life of another and acted with conscious disregard for life, may be guilty of second degree murder"]; *Glukhoy, supra,* 77 Cal.App.5th at p. 588 [same; "aiding and abetting implied malice murder is a valid theory of liability for second degree murder"].)

Consistent with *Gentile*, the jury was instructed that to find Cordero held the requisite mens rea for aiding and abetting the murder committed by Calderon, it needed to conclude only that he acted with reckless disregard for human life when he intentionally assisted Calderon by bracing the victims and joining in the shooting.[2]

---

[2]  Specifically, the court instructed the jury with CALCRIM No. 401 (aiding and abetting requires that the defendant "specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of" the target crime); CALCRIM No. 520 (murder requires malice;

12

This was a proper instruction on a valid theory, supporting a valid finding.

Cordero relies on *McCoy* for the proposition that to be guilty of murder, an aider and abettor must share the perpetrator's "murderous intent." He selectively quotes from *McCoy* the following: "[O]utside of the natural and probable consequences doctrine, an aider and abettor's mental state must be at least that required of the direct perpetrator . . . the aider and abettor must know and share *the murderous intent* of the actual perpetrator." (*McCoy*, *supra*, 25 Cal.4th at p. 1118, Cordero's italics.)

Armed with this rule, Cordero argues that by convicting him only of second degree murder, the jury necessarily found he did *not* share Calderon's murderous intent. Therefore, pursuant to *McCoy*, the conviction must have resulted from application of the natural and probable consequences doctrine.

We reject Cordero's rule because he draws it from an incomplete quotation of *McCoy*. We also reject his premise that by convicting him only of second degree murder, the jury necessarily found he did not share Calderon's murderous intent. The jury may simply have found he did not share Calderon's premeditation, deliberation and willfulness.

We set out the full *McCoy* paragraph in a footnote.[3] For our purposes, we observe that Cordero omits three material

implied malice requires, inter alia, conscious disregard for human life).

[3] The full paragraph from which Cordero draws his quotation is as follows:

"We have described the mental state required of an aider and abettor as 'different from the mental state necessary for

statements contradicting his characterization of *McCoy's* holding. First, Cordero leaves out the paragraph's opening sentence, in which the Court reminds us that "We have described the mental state required of an aider and abettor as '*different* from the mental state necessary for conviction as the actual perpetrator.'" (*McCoy*, *supra*, 25 Cal.4th at p. 1117, italics added.) Second, Cordero omits a footnote in which the court reiterated that " 'It is the intent to encourage and bring about conduct that is criminal, *not the specific intent that is an element of the [charged crime]*, which . . . must be found by the jury.'" (*Id.* at p. 1118, fn. 1, italics added.)

---

conviction as the actual perpetrator.' [Citation.] The difference, however, does not mean that the mental state of an aider and abettor is less culpable than that of the actual perpetrator. On the contrary, outside of the natural and probable consequences doctrine, an aider and abettor's mental state must be at least that required of the direct perpetrator. 'To prove that a defendant is an accomplice . . . the prosecution must show that the defendant acted "with knowledge of the criminal purpose of the perpetrator *and* with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense." ([*People v. Beeman*].) When the offense charged is a specific intent crime, the accomplice must "share the specific intent of the perpetrator"; this occurs when the accomplice "knows the full extent of the perpetrator's criminal purpose and gives aid or encouragement with the intent or purpose of facilitating the perpetrator's commission of the crime." (*Ibid.*)' [Citation.] [Fn.] What this means here, when the charged offense and the intended offense—murder or attempted murder—are the same, i.e., when guilt does not depend on the natural and probable consequences doctrine, is that the aider and abettor must know and share the murderous intent of the actual perpetrator." (*McCoy*, *supra*, 25 Cal.4th at pp. 1117-1118.)

14

Third and most importantly, Cordero, with an ellipses spanning two and a half sentences, omits the Court's explanation of what it meant by the phrase "murderous intent": "To prove that a defendant is an accomplice . . . the prosecution must show that the defendant acted . . . 'with an intent . . . *either* of committing, *or of encouraging or facilitating* commission of, the offense.' " (*McCoy*, *supra*, 25 Cal.4th at p. 1118, italics added.)

Or as our Supreme Court later explained the concept, a direct aiding and abetting theory "requires that 'the aider and abettor . . . know and share the murderous intent of the actual perpetrator.' (*McCoy*, *supra*, 25 Cal.4th at p. 1118.) For implied malice, *the intent requirement* is satisfied by proof that the actual perpetrator ' "knows that his conduct endangers the life of another and . . . acts with conscious disregard for life.' ' " (*Gentile*, *supra*, 10 Cal.5th at p. 850, italics added.)

In sum, *McCoy* three times in the quoted paragraph distinguishes an accomplice's intent to aid the perpetrator from the perpetrator's intent to commit the target offense, thus contradicting the rule Cordero would draw, that an accomplice and perpetrator must share the same intent. We therefore reject Cordero's argument that accomplice liability depends on the accomplice sharing a perpetrator's specific intent to commit the target crime.

C. **Cordero Was Not Convicted of Aiding and Abetting an Implied Malice Murder**

Cordero argues that one cannot be convicted of "aiding and abetting an implied malice murder" because direct aiding and abetting requires intent to commit a crime, but in an implied malice murder the direct perpetrator does not "intend" to commit

15

a murder.  In other words, Cordero argues, "one cannot intend to aid a crime that was not intended."

The point is irrelevant because the crime Cordero was convicted of aiding—the murder of Borboa by Calderon—was intentional.  The jury convicted Calderon of first degree murder.  A "defendant is guilty of first degree murder if the People have proved that he acted willfully, deliberately, and with premeditation.  The defendant acted *willfully* if he intended to kill."  (CALCRIM No. 521.)  "An intent is the ' "functional equivalent" ' of *express* malice."  (*People v. Moon* (2005) 37 Cal.4th 1, 29.)  Because Calderon was convicted of an intentional murder, Cordero's jury convicted him of aiding and abetting an express malice crime.

## DISPOSITION

The trial court's order denying Cordero's resentencing petition is affirmed.

NOT TO BE PUBLISHED

CHANEY, J.

We concur:

ROTHSCHILD, P. J.

BENDIX, J.

16